GEORGE CLINTON WILSON,

        Petitioner,

   v.                         Case No. 18-cv-1652-pp

RANDALL HEPP,

        Respondent.

**ORDER DISMISSING *HABEAS* PETITION (DKT. NO. 1), DISMISSING CASE WITH PREJUDICE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

On October 17, 2018, the petitioner, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2014 conviction in Milwaukee County Circuit Court for first-degree reckless injury with the use of a dangerous weapon, endangering safety by use of a dangerous weapon and four counts of first-degree recklessly endangering safety with the use of a dangerous weapon. Dkt. Nos. 1; 1-1 at 1. On September 29, 2020, the court screened the petition, allowed the petitioner to proceed and ordered the respondent to answer or otherwise respond. Dkt. No. 8. The parties have fully briefed the petition.

The petitioner is not entitled to *habeas* relief. This order denies the petition, dismisses the case and declines to issue a certificate of appealability.

1

# I. Background

## A. Underlying State Case

### 1. *Trial in Milwaukee County Circuit Court*

In its decision affirming the petitioner's conviction, the Wisconsin Court of Appeals provided the facts relevant the charges of which he was convicted:

> This case began with a minor errand. J.S. planned to meet with [the petitioner's] sister Cynthia at about 12:30 p.m. on December 17, 2013, in the lobby of a Milwaukee apartment building. The purpose of the meeting was arranged so that J.S. could give Cynthia fifty dollars sent by Cynthia's boyfriend. [The petitioner] arrived with Cynthia. J.S. was in the apartment lobby with five people. Witnesses later testified that [the petitioner] became agitated, accused the group of planning to jump Cynthia, and began saying threatening things. [The petitioner] pulled a gun from his waistband, walked out through the lobby's glass doors, and then turned and shot back into the building. A bullet fragment struck C.S. in the head. An apartment security guard saw the incident through a window and called 911.

Dkt. No. 14-5 at ¶2. On February 1, 2014, the State filed a criminal complaint in Milwaukee County Circuit Court charging the petitioner with first-degree reckless injury, endangering safety by the use of a dangerous weapon and four counts of first-degree recklessly endangering safety. State v. George Clinton Wilson, Milwaukee County Case No. 2014CF000442 (available at https://wcca.wicourts.gov).

At trial, Attorney Richard Johnson represented the petitioner. Dkt. No. 1-1 at 4. Several witnesses, including C.S., identified the petitioner as the shooter. Dkt. No. 14-5 at ¶5. One witness testified "that he told police that Cynthia's brother was the shooter and that he had gold teeth." Id.

2

The court allowed the petitioner to raise a mistaken identity defense and "suggest to the jury that his brother Jonathan, who resembles [the petitioner], was the person who committed the crime." Id. at ¶6. The petitioner testified at trial, stating that he was not with Cynthia on the day of the shooting and "that he and Cynthia had a brother named Jonathan." Id. at ¶7. The petitioner testified that "he did not know if Jonathan was with Cynthia on December 17, 2013, and that he did not know 'where either one of them was' on that date." Id. The petitioner also testified that did not have gold teeth on the day of the shooting, but that his brother did. Id.

On June 27, 2014, the jury found the petitioner guilty on all counts. Wilson, Milwaukee County Case No. 2014CF000442. On December 12, 2014, the court sentenced the petitioner to twenty-four years of incarceration followed by forty-three years of extended supervision. Dkt. No. 14-1 at 2. The clerk entered judgment four days later. Id.

> 2.  *Postconviction hearing*

On May 3, 2016, the petitioner filed a motion for a new trial in the circuit court. Wilson, Milwaukee County Case No. 2014CF000442. The petitioner asserted that Attorney Johnson provided ineffective assistance by failing to investigate an alibi defense. Dkt. No. 14-5 at ¶10. "In support of his motion, [the petitioner] submitted an affidavit stating that at the time of the shooting, he was living in Janesville with his brother, Earl Wilson, and Jennifer Jones." Id. He contended that he informed Attorney Johnson of the alibi "at least one month" before trial. Id. The petitioner "also submitted affidavits from Earl

3

Wilson and Jones" attesting that the petitioner lived with Earl and Jones in Janesville, "had no form of transportation," generally never left the house alone and "had not left the house on that particular day." Id.

The court held an evidentiary hearing at which the petitioner, Attorney Johnson "and two witnesses whose testimony purported to support [the petitioner's] unpresented alibi defense" testified. Id. at ¶11. Attorney Johnson testified that the petitioner "had told him that [the petitioner] was in Janesville at the house of his brothers Jonathan and Earl and the time of the shooting." Id. at ¶12. Attorney Johnson specified that the petitioner "had not told him he was living in Janesville at the time but only that 'at the time of the shooting that's where he was,'" and "'[t]he way it was left' was that [the petitioner] was to get trial counsel 'either an address or a phone number' and let trial counsel know how to contact his brothers.'" Id. Attorney Johnson testified that the petitioner gave him no further information. Id. Attorney Johnson explained that in his fifteen years of experience practicing law in Milwaukee, he found it common for a client to claim an alibi, and "when the client is asked to provide more details, counsel will 'never hear again.'" Id.

Attorney Johnson testified that he had informed the petitioner prior to trial that "there was no alibi and that the case would be tried on mistaken identification." Id. He testified that on the first or second day of trial, the petitioner "came up with well, Jonathan looks just like me [the petitioner]." Id. The petitioner told Attorney Johnson that the fact that he and his brother

4

looked alike was important because witnesses knew the petitioner's sister, and the petitioner's sister said she "brought my brother with me." Id.

The petitioner testified at the evidentiary hearing that he obtained his brother's phone number from his mother while in jail and provided that number to Attorney Johnson. Id. at ¶13. On cross-examination, the petitioner "was asked if he had called his brother and he said he had not." Id. The petitioner claimed he could not remember why he was able to call his mother, yet unable to call his brother. Id. The petitioner "also testified that his brother Jonathan was also living with Earl in Janesville at the time [the petitioner] was living there." Id. When asked why he never asserted Attorney Johnson's failure to investigate the alibi as a basis for his request to discharge Attorney Johnson, and instead argued that Attorney Johnson pressured him to plead guilty, the petitioner replied that he "never got to continue to talk" about the alibi. Id.

Jennifer Jones testified at the evidentiary hearing that the petitioner lived with her and Earl Wilson in December of 2013. Id. at ¶14. Stating that she went shopping on the day of the shooting and left her son with the petitioner, Jones testified that the petitioner did not leave the house that day. Id. "In addition to [the petitioner], she listed her son and four other unrelated people who were living in the house with her and Earl." Id. Jones testified that no other brother of the petitioner lived with them, and that the petitioner had Earl's number. Id.

Earl Wilson testified that the petitioner "had been picked up in Milwaukee on December 6, 2013 and left in 'early January.'" Id. at ¶15. When

5

listing the others who lived in the home, Earl Wilson stated that "Jonathan was not living with them at the time." Id. "He also testified that [the petitioner] never contacted him at any time during the court proceedings." Id. Finally, an investigator from the Wisconsin State Public Defender's Office testified that "he would have been able to locate Earl Wilson with the information available to trial counsel." Id. at ¶16.

On September 9, 2016, the circuit court denied the motion for a new trial. Wilson, Milwaukee County Case No. 2014CF000442. In the court's opinion, "there were certainly credibility issues." Dkt. No. 14-5 at ¶17. It concluded "that trial counsel was 'certainly more credible than . . . the testimony of others who in fact testified.'" Id.

### 3. *Wisconsin Court of Appeals decision*

A month later, the petitioner filed a notice of appeal. Wilson, Milwaukee County Case No. 2014CF000442. Citing Attorney Johnson's alleged failure to investigate the alibi, the petitioner argued ineffective assistance of counsel. Dkt. No. 14-5 at ¶22. He did not challenge the circuit court's finding that he did not provide Earl's phone number to Attorney Johnson. Id. Instead, the petitioner argued that it was objectively unreasonable for Attorney Johnson to rely on the petitioner to provide contact information for the alibi witnesses. Id. The petitioner reasoned that Attorney Johnson could have found the alibi witnesses with minimal effort, and that there was no strategic reason to ignore the alibi. Id. As to prejudice, the petitioner argued that the jury presumably would have credited the alibi witnesses' testimony. Id. at ¶27.

6

On January 23, 2018, the Wisconsin Court of Appeals affirmed the circuit court's judgment and denial of the petitioner's motion for a new trial. Dkt. No. 14-5 at 1.

B.      Federal *Habeas* Petition (Dkt. No. 1)

On October 17, 2018, the petitioner filed this federal *habeas* petition. Dkt. No. 1. The petitioner argues ineffective assistance of counsel and that the State of Wisconsin violated his right to a fair trial. Id. at 6-7. On September 29, 2020, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases and allowed the petitioner to proceed on both claims. Dkt. No. 8. Six weeks later, the respondent answered the petition. Dkt. No. 14.

On March 29, 2021, the petitioner filed a brief in support of the petition. Dkt. No. 22. The petitioner argues that the Wisconsin Court of Appeals "erroneously" applied Strickland v. Washington, 466 U.S. 668 (1984) in its decision affirming the petitioner's conviction. Id. at 16. On June 23, 2021, the respondent filed a brief in opposition to the petition. Dkt. No. 23.

## II.   Analysis

A.      Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-

7

60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B.     Due Process—Fair Trial

In a section of the petition titled "Issues for Petition for Writ of Habeas Corpus," the petitioner listed the following:

8

II. Whether the State created precedence contrary to well-established supreme court law permitting the Courts in the State of Wisconsin to determine the credibility of an uncalled witness and assume[d] the jury would have given more weight to other witnesses' testimony disallowing jury to hear the uncalled witness' testimony usurping [the petitioner's] right to a Sixth Amendment guarateed [sic] fair trial?

Dkt. No. 1 at 7.

In its screening order, the court allowed the petitioner to proceed on a claim that the State of Wisconsin violated his right to a fair trial. Dkt. No. 8 at 6. The petitioner's arguments begin at page fifteen of his eighteen-page brief in support of his petition. Dkt. No. 22 at 15. That section of the brief argues that the petitioner was deprived of effective assistance of counsel but makes no mention of due process or an uncalled witness. The petitioner identifies no action on behalf of the prosecution or the court that he believes violated his right to a fair trial, and cites no relevant case from the United States Supreme Court addressing the due-process right to a fair trial. In its decision affirming the petitioner's conviction, the Wisconsin Court of Appeals did not discuss any due process claims.

The court notes that on direct appeal, the petitioner raised a similar argument in the context of his ineffective assistance of counsel claim. Dkt. No. 14-2 at 13. In his discussion of the prejudice prong of Strickland, the petitioner asserted "[t]he Court should assume that the jury would have found the testimony of Earl Wilson and Jennifer Jones just as credible as any other witness." Id. at 20 (citing State v. Jenkins, 355 Wis. 2d 180, 202-03 (2014)). He argued that "[w]itness credibility and the weight given to witness testimony is

9

solely for the jury to decide." Id. (citing State v. Friedrich, 135 Wis. 2d 1, 16 (1987)).

To the extent the petitioner meant to raise this argument in the context of his ineffective assistance of counsel claim before this court, the court addresses ineffective assistance below. To the extent the petitioner meant to assert this argument as a separate constitutional claim, the claim is undeveloped and the court has no basis for granting relief on that claim.

### C. Ineffective Assistance of Counsel

"Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." United States v. Berg, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing Strickland, 466 U.S. at 687). "The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 566 U.S. 156, 163 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 694).

10

Establishing that a state court's application of *Strickland* was unreasonable under § 2254 is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential", and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105 (internal citations and quotations omitted).

In his brief before this court, the petitioner asserts that he informed Attorney Johnson that he was "living in Janesville with Earl and Johnathan at the time of the shooting." Dkt. No. 22 at 17. He says that Attorney Johnson "did nothing to locat eeitehr [sic] of these men, and instead told [the petitioner] to get him contact information so he could investigate further." <u>Id.</u> The petitioner "accepts that circuit court's factual finding that he never provided Johnson with this information." <u>Id.</u> He concludes, however, that "[i]n light of all circumstances, counsel was ineffective." <u>Id.</u> According to the petitioner, Attorney Johnson's "decision not to conduct an additional independent investigation into [the petitioner's] alibi" violated <u>Strickland</u>. <u>Id.</u>

The Wisconsin Court of Appeals considered the petitioner's claim that Attorney Johnson was ineffective for failing to sufficiently investigate the alibi involving the petitioner's brother. Dkt. No. 14-5 at ¶22. The court of appeals concluded that after the petitioner told Attorney Johnson that he had an alibi in Janesville and provided the names of potential alibi witnesses, Attorney Johnson reasonably asked the petitioner to provide contact information for

11

those witnesses. Id. at ¶24. It noted Attorney Johnson's postconviction hearing testimony that "it was not uncommon for clients to make an initial claim of a potential alibi and then abandon the claim when asked for information to corroborate it." Id. Attorney Johnson testified that the petitioner "did not ever provide any alibi witness information, and the trial court found that trial counsel was the more credible witness." Id. The court emphasized that Attorney Johnson did not endorse the alibi defense by allowing the petitioner to testify to the alibi. Id. at ¶25. It stressed that Attorney Johnson told the petitioner before trial "that no alibi defense was supported and they adopted an alternative defense strategy—that [the petitioner's] brother Jonathan 'looks just like' [the petitioner]—and supported it with a photo of his brother which was shown to the jury." Id. Acknowledging that the petitioner told Attorney Johnson that he had been in Janesville on the day of the shooting, the court concluded that the petitioner "then completely abandoned the issue—not mentioning it again even when he was listing counsel's professional failings to the trial court prior to trial in an attempt to discharge his counsel and delay the trial." Id.

The court of appeals found that Attorney Johnson's "explanation of his experience that abandoned alibi claims were common . . . along with the fact that [the petitioner] abandoned the issue after raising it briefly, compel[led] the conclusion that the way counsel proceeded was not unreasonable." Id. at ¶26. Id. It noted that in addition, the petitioner ultimately raised a defense that implicated his brother, one of the alibi witnesses. Id.

Even assuming that Attorney Johnson's performance was deficient, the court of appeals could not identify any prejudice resulting from the allegedly deficient performance. Id. at ¶27. The court found that there was no reasonable probability of a different outcome had Attorney Johnson located Earl Wilson and Jennifer Jones. Id. It characterized the evidence at trial as "direct and overwhelming." Id. at ¶28. As the court recounted,

> [m]ultiple eyewitnesses identified [the petitioner] as the shooter; there was conversation and interaction between him and the others present prior to the shooting. At least one testified that she knew him by first name from meeting him at a party prior to the shooting. Others knew his sister well and identified him as her brother. Although the shooting victim could not identify him in a photo array (while medicated and hospitalized from her head wound), multiple witnesses did so with a high level of certainty.

Id.

And, the court of appeals observed, the trial court gave the petitioner wide latitude at trial. Id. at ¶29. It stressed that the court allowed the petitioner to point the finger at the only other person—the petitioner's brother—who might fit with the witnesses' descriptions of the shooter, and that the court did so over the State's objection and having "seemingly acknowledged" that the petitioner did not satisfy an applicable evidentiary standard. Id. Ultimately, the court of appeals determined that "[a]dding the testimony of [the petitioner's] brother and his brother's girlfriend—not precise as to time—[was] not reasonably probable to change [the jury's] verdict." Id.

Finally, the court concluded that "the proffered testimony itself [could not] be taken as true because [the petitioner] and his alibi witnesses offered internally inconsistent versions." Id. at ¶30. "[T]hey did not testify consistently

13

about whether Jonathan was living with Earl and his girlfriend at the time of the crime." <u>Id.</u> "[The petitioner] said he was; Earl and his girlfriend said he was not." <u>Id.</u>

The court of appeals' decision was within the bounds of reasonableness required by §2254(d). It was reasonable for Attorney Johnson not to investigate the petitioner's alibi defense further than he did. Attorney Johnson exercised strategic judgment in deciding not to further pursue the alleged alibi; his testimony at the postconviction hearing reflected his belief that clients commonly abandoned alibis when he asked for details. The record reflects that the petitioner and Attorney Johnson made a strategic choice to present the mistaken identity defense. That the strategy did not result in an acquittal does not prove that Attorney Johnson was ineffective in his representation of the petitioner. <u>Harrington</u>, 562 U.S. at 109 ("the prosecution's response shows merely that the defense strategy did not work out as well as counsel had hoped, not that counsel was incompetent."). Given the bulk of evidence presented at trial, the court of appeals' conclusion that the testimony of Earl Wilson and Jennifer Jones would not have changed the outcome was reasonable.

The court will dismiss the petition and the case.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing

of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate whether the petitioner's claims warrant *habeas* relief under 28 U.S.C. §2254(d).

## IV.    Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 29th day of December, 2021.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

15